Good morning, Counsel. Good morning, Your Honor. May it please the Court. Tripp Johnston of Federal Defenders on behalf of the appellants in this case. One thing is clear. This Court has never passed on a shackling policy as widespread, indiscriminate, and humiliating as the one now imposed on a daily basis in the Southern District of California. However, the government, despite this, says, as in Howard, so here. But Howard itself tells us that it did not define the full contours of the individual's right to be free of restraints in pretrial proceedings. And as this Court in Brandau suggested, Howard very well may be limited to its facts insofar as Brandau said, quote, We've not fully defined the parameters of a pretrial detainee's liberty interest in being free from shackles at his initial appearance, end quote, and finding nothing in Howard controlling when examining a more extensive shackling policy for initial appearances in another district. Could I just ask you a question about the Southern District? There are two buildings there. There are courtrooms in both. That's correct. There's a new building that was just built under current standards of security and then there's the old building that was kind of falling apart. But they both have courtrooms. I think the judges in the old building still think it's quite a nice building. But there are two buildings. Courtrooms are divided between the buildings. And this policy affects both buildings? This policy affects the entire Southern District, including Imperial County. And it's a policy that requires shackles not only at initial appearances, but all other magistrate appearances, and including district court appearances such as evidentiary hearings, motion hearings. We even have an example of a bench trial where an individual is shackled in five-point restraints. It's a comprehensive policy, and because this policy is so much more extensive, the Southern District has now forced this court to define the contours of this individual right. And to do so, the court has to go back to first principles. Substantive due process protects those rights implicit in the concept of order and liberty. And at the very least, that includes those rights accorded to individuals by the common law at the time of our founding, a common law tradition that required individuals to be free from restraint, absent a particular risk of flight or violence. Let me ask you this, Counselor, because we're not exactly writing on a clean slate, given Howard, which essentially says that shackling in a non-jury proceeding may not violate due process if it's supported by adequate justification of necessity. And the evidentiary record in this case seems to me to be much better than the evidentiary record that was presented and accepted by us in Howard. So can you start from that premise and tell me why, despite the evidence that was presented to the Southern District in this case, why it's still a problem, and kind of argue it in relation to Howard and help me understand why this is a problem when the leg shackles in Howard was not deemed to be a problem? Well, I think there's at least three areas that would demonstrate Howard's limitations or what I would find to be problematic with Howard's application to a much more extensive policy. And then I'd like to take the opportunity to suggest that this Court, when I say must go back to first principles, must address those three fundamental principles that Deck versus Missouri illuminated that would guide us in determining what extent shackling is permissible. But for the three limitations to Howard, there's certainly the factual distinctions. And the one that Your Honor just mentioned, that we're talking about leg restraints at initial appearances in Howard, whereas here we're talking about restraints and often full restraints for significant proceedings all the way through the District Court. Not only when there is a group of individuals in a particular courtroom, but a single individual with two marshals standing beside him, a courtroom security officer, in addition in the courtroom, is still coming into court shackled. So it's okay if there's a group for them to be in full shackles? That's not my position, Your Honor, but that certainly was what was considered in Howard to be one of the justifications for mere leg shackles at initial appearances. You would agree security is a legitimate justification? There is no question that security is a legitimate consideration. And this goes to one of the other factors I want to touch on about Howard's limitations. Security is a legitimate factor, but at some point it must be weighed and balanced against significant constitutional rights that every defendant is afforded and should not only be able to exercise in court, but be willing to exercise. But to ---- Well, given the record in this particular case of marshals understaffing, trying to cover a two-courthouse, a very, very heavy caseload there in the Southern District, what level of restraint would be appropriate in light of this record? Well, let's take the ---- I'll answer all three. Let's take the first example first, marshals understaffed. We were never afforded an opportunity to have an evidentiary hearing where evidence was taken, where proffers or suggested justifications could be challenged in what is the traditional courtroom style when there is a disagreement about the facts. However, it was illuminated at the hearing that was had that there was not an understaffing of marshals for the courtroom. Judge Wen, you mentioned the second issue being having two separate courthouses. Again, the rule that our common law tradition has established and the rule that we propose to this Court is solely concerned with the defendant's appearance in the courtroom. We have not challenged their transportation or how they're transported between courtrooms. We have not challenged how they're held and holding cells outside the courtroom or in other parts of the courthouse. So your position is once they walk through the courtroom door, it's a different situation. It's an absolutely different situation. And that's why I feel like the DEC principles allow us to understand that difference and require us to see what is problematic about a policy that would essentially defer to the marshal's judgment. But DEC was limited to the jury trial. You want to expand it to all proceedings in the court. We do have to examine DEC. And not only do we have to examine its dicta, which I would consider to be unfortunate and unfounded, but more importantly we have to consider DEC's mode of analysis. This Court in Miller v. Danny has told us that what controls even this panel, even if we have Howard on the books, is the mode of analysis of the highest court. And that mode of analysis requires us to look at three things, maintaining dignity and decorum in the courtroom, ensuring effective representation of No, I understand the argument and your desire for us to go back to DEC and first principles, but unless we go en banc, we've got Howard. So what level of shackling would the defense think is appropriate in this case? Complete unrestrained in light of this evidentiary record and in light of the evidentiary record that was in Howard? Five-point restraints, not okay, but something less than that might be okay? Well, if this Court wouldn't take the invitation of the en banc authority in Miller v. Danny to apply the mode of analysis from DEC and instead felt bound by Howard, I would ask this Court to limit Howard to its facts. And again why? I'm not taking any pride of authorship, but I thought, you know, the final opinion in Howard is 480, Fed 3rd, 1005. Do you read that as applicable to any courthouse in the United States, that shackling is okay? Well, I don't. And I certainly think you got it right the first time in Howard. Well, so did I. But I understand the challenge presented, and I am trying to provide the Court with what I think is the analysis. I think the Court must consider DEC's mode of analysis. But assuming Howard exists, that is leg shackled. It does exist. So if we were to write an opinion in this case, we've got to address Howard. And I'm struggling with how you would propose that we do that. Give us a sense. What would you want us to say about Howard? I would like to say if the Court does not feel that it can overrule Howard or apply through Miller v. Gammie the analysis in DEC, that Howard applied only to leg shackles at initial appearances for a particular courtroom under particular circumstances where, and this is the second factual distinction I was getting to, the marshal averred that that courtroom posed the greatest risk of flight or violence in that courthouse. The marshal had the opportunity here in some 20 pages of declaration to aver that. He didn't. The Court cites to one magistrate judge who indicated that the magistrate courts are located on the first floor of the old courthouse. But she didn't indicate that that means that the greatest risk of violence or escape occur in that courtroom. Can I ask you to go ahead? I was only going to talk about what I think is probably the most important factual distinction and another reason why this Court could write beyond Howard for this particular district. Judge Schroeder asked if this applies to all courts across the nation. I don't think so. I think Howard was very fact specific. But one thing that is different in the Southern District is that the marshals take custody of the defendants when they come into the courthouse. And before they do that, these defendants go through security screening. Now, in Deputy Marshal Johnson's declaration in this case, he calls that social screening. But we had litigation in the Southern District about a year before that in which Deputy Marshal, and this is attached in the excerpts of record at 287, indicates that what he's now calling social screening that he feels is inadequate was actually security screening performed by the MCC San Diego that, in addition to that, the MCC San Diego or other prison officials were strip searching the individuals before they came to the courthouse. And all of that was offered as a justification of why the system that the marshals had created was necessary. And this was in the context of Rule 5 litigation of undue resentment and delay. So at some point, these security measures, the security screening in the Southern District was something that the government would rely upon. Today they call it social screening. But the fact is this is different than the Central District. This is the distinction that makes a difference and I think could give this court cause to limit Howard to its facts. And again, I mean, we have Brandau. Brandau has indicated in the context of initial appearances where there are five-point restraints that this court has not defined the contours. Brandau would have no cause or reason to remand that case concerning the Eastern District's policy had Howard applied the rules the government would have the court apply here. Can I now ask you to answer Judge McEwen's question earlier, which was what would you find wrong if, for example, the policy was leg irons only? Is that okay? What level do you think passes muster? Well, I don't think leg irons are okay, is the short answer. And I think the reason is no leg irons, no handcuffs. What? You want them in without anything? Is that the initial presumptive okay? Unless there is a particular risk of flight or violence, yes. You want individualized assessment of dangerousness or the need for shackles for every single defendant? Which, from a practical standpoint for that district, I don't know how that would work out. For any district. And I'm not asking for that. The presumption has been turned on its head. The traditional rule applied since ancient times is that you must remain free from fetters unless the government or the marshal or whoever it is posits that a particular individual poses a particularized threat. Do you think that under – are you conceding that under Howard a shortage of marshals is sufficient to require shackles in any place? No, I'm not. Because I think that there are individual interests at stake in this case. All I'm saying is in this district, that proved not to be the case. The marshals had adequate marshals for courtroom security. So I guess it's a question that doesn't need to be answered in this case, because the marshals have indicated they have a full staff for courtroom security. But when you say limiting Howard to its facts, what do you mean? Well, I mean that it addressed a particular shortage of marshals. It's not precedent? Well, no. It's a precedent for the Robaille Courthouse in Los Angeles. Robaille. Sorry. Apologies. Have you ever been there? No, Your Honor. I have not. Okay. Didn't think so. I've seen it from the outside. But, yes, it is so limited. And Judge Zaharie, you asked what do I think would be appropriate. Would leg irons be enough? What we find when we do apply Dex principles, and I think we have to if we're going beyond leg irons at initial appearances, is that there are three principles. Dignity and decorum and the ability and willingness to have effective representation in defense necessarily include the defendant's perspective. And when we look at the authorities that Dex cited, the very authorities that undercut the dicta that I think led the court astray in Howard, we find that those authorities were focused primarily on the effect on the defendant. And I think when we look at Hawkins' quote, which is quoted with favor by the Supreme Court, we have ---- What is the adverse effect on defendant who was already restrained in prison before they get to the courtroom, they go through security on their way to the courtroom, and so what is the effect of walking through the courtroom door and not having some form of restraint continue? Shame, humiliation, embarrassment. None of that occurs before they walk through the courtroom door? It may occur before they walk through the courtroom door, but when those are the effects or the shackles have the tendency, again, to quote the Supreme Court, they quoted the California Supreme Court in People v. Harrington, the mere tendency to confuse or embarrass a defendant when they walk into the courtroom, and they're expected to exercise their constitutional rights. They're expected to be able to communicate with counsel. They're expected to want to be willing to communicate with counsel. Those marks of ignominy, to use Hawkins' words from the 1700s, those are the very things that can compromise a judicial system that we put all of our weight into to give us a correct result and to permit defendants, even in a system of pleas, as Justice Kennedy said recently in Lafleur and Frye, even in a system of pleas, these defendants need to have enough dignity and self-respect to exercise those rights. The government says we are talking about mere speculation. The Supreme Court says the mere tendency to confuse and embarrass is enough. But we have facts. We have a declaration of Mr. Montes de Oca. The full shackling policy doesn't apply to change-of-plea proceedings or sentencings before district judges can have them removed, right? Yeah, well, that's a lot of things. It applies to five-point restraints to changes of pleas in magistrate court. The individual can't even raise their hand to swear that what they're saying is true. According to the terms of the policy, it does not apply to changes of pleas before district judges, which is actually rare in our district. According to the policy, it's only leg restraints at sentencing before district judges, but we have a record here where a woman in a wheelchair who is so infirmed that the government has essentially agreed to a probationary sentence in a drug importation case is wheeled in five-point restraints for her sentencing. And we have examples replete in the record of individuals in pain, of individuals who do appear confused and embarrassed. And what we have is a magistrate judge saying for an individual in five-point restraints, and I just want to step out and demonstrate this. We have Supplemental Code of Progress in the Seventh District, a very good place for government to pass a law. It's not all hands together. It's attached to place with legs together. A magistrate saying all they have to do is use their arms. I'll know if they need to talk to counsel if they didn't understand something. I mean, this is demeaning. What are they supposed to do? Do you have any examples in the record of how often individual district judges or magistrate judges vary from the standard? We have one example of one judge who requires no shackles whatsoever. And what's interesting about that example is not that it shows that discretion is being liberally exercised. To me, it shows that the tradition we've had for over three decades in the Southern District of not shackling anyone absent an individualized need has been working, that that judge is comfortable with that. But what we have on the far end of the spectrum is magistrate judges who say the standard for an individualized determination isn't whether they pose a flight or safety risk, isn't whether they can't communicate with counsel. It's solely physical infirmity. Otherwise, counsel, I will not hear any due process objections. We have one judge who even refused to hold an individualized hearing, telling counsel, I don't have time for individualized determinations. Who's supposed to make those individualized decisions? The marshals, the judges, some third party? I certainly want to reserve some time for rebuttal. However, the ultimate determination is made by the Court. And this is where I think the Court got it right in the first Howard. The Court not only has a prerogative, it has a duty to weigh legitimate security concerns against all these heavy and weighty constitutional rights that individuals need to be able to exercise. Well, I am, maybe I'm confused. You just referred to sentencing. What group of people are we talking about here? Well, we're talking about all people being restrained in all non-jury proceedings, and whether it's leg irons or five-point restraints. We're not talking about detainees? Yes, we're talking about people. Anybody who's being, not pretrial detainees? These are pretrial detainees. That's what I thought. Yes, correct.  So we're not talking about everybody at every stage of the proceedings. Well, we are. We're talking about people. Are we? That's my question. Are we talking about people pretrial? Are we talking about people who are being sentenced after being convicted of it? Convicted and sentenced. We're talking about all detainees up to and until sentencing. But these detainees who are restrained in five-point restraints include people at their bench trials. I'd just quickly like to ---- You have 26 seconds. When you fully answer that, do you want to save that? No, I'll save it. All right. Let's hear from the government. Good morning. Kyle Hoffman for the United States. I'd like to start with just getting clear on what the policy is in the Southern District of California. And that's embodied in written form in Judge Moskowitz's letter at pages 258, 259 of the excerpts of record. Essentially, the point I'd like to get across is that there's individual discretion, court discretion for district judges at a number of different levels. The policy as stated in Judge Moskowitz is, yes, you marshals, if you want them to come in full restraints, we'll go along with that, but not for changes of pleas in the district court and not for sentencing in the district court. And the third level of discretion is any individual judge in any individual case can say, I don't want restraints in this court. Does the record reflect how individual judges are varying from what I'll call the default policy? It does, but it's a particular snapshot of a particular time. And to be ---- It doesn't tell us much. To be totally ---- Well, I'll say two things. One, it does say that Judge Huff, for instance, as everybody acknowledges, there are no restraints, not even leg irons, on defendants all the time in her courtroom. And I have something further to say about that later if we want to talk about that. But so that's one. And the point I'd like to make about that is that that's not just an individual defendant's case. That's a courtroom discretion kind of on a broader level. So we've got discretion in individual cases and discretion in individual courtrooms. And to be candid with the court, I went and watched calendars for pretty much every single judge and asked other calendar assistants, what's the policy in the courtroom now? And it's backed off to some extent from the policy as enunciated in Judge Moskowitz's letter. I'm not going to say it's totally consistently backed off. But the point is that the record shows that individual judges can and have backed off not only for individual defendants, but as a general rule in their courtrooms. Well, maybe that suggests that the default policy is a bit harsh. Well, that brings up the point about Judge Huff. I think that was the argument made by counsel. Well, this shows everything is hunky-dory. Judge Huff does it this way. I'd suggest no. And here's why. We're talking about risks. And risks don't always manifest themselves at the very point where somebody says, oh, I'm going to do something different. And the risk varies depending on what other judges do. In other words, Judge Huff may say, I don't want this in my courtroom. And the marshals can handle that. Why? Well, because restraints are used in other courtrooms and their resources aren't diverted in those instances. The point being there, one thing connects up with another. But would we say that do you – I don't – I guess I don't understand the business of – the argument that if there aren't resources, then we can shackle. Do we – we don't permit that in prisons. We don't say you don't have enough money in the State of California to provide medical care for all these people, so therefore you don't have to give them medical care. I understand, Your Honor. We will permit overcrowding because you don't have enough guards or facilities. A couple of points, Your Honor. I don't – I think there was talk about the understaffing of the marshals. But I don't think – Have you heard of sequester? Yes. And there's a reason why this came up at a certain time. Two big reasons. Sequester and a new courthouse. Okay? Circumstances had changed for the marshals, undoubtedly. Is this a temporary policy? No, not so. But the courthouse makes a big difference, Your Honor. I mean, I think counsel's point is, well, judges are the same, and so on. But we're talking about a lot of physical change. And the physical change makes a difference in how the marshals have to deal with a very, very large number of in-custody defendants. Does the evidentiary record here support full restraints, five-point restraints, versus some lesser level of restraint? Here's my response, Your Honor. I noticed that that was a constant refrain of what level of restraint is appropriate, what level of restraint is appropriate. Can you answer yes or no and then explain? I can't. And the reason why is that's the – in the first instance, that's the marshal's call. That's under the case law. That's under – we're not giving them like a mandate to do that. Well, that's not as a matter of due process. Well, no. We don't give them ultimate and infinite discretion to decide. Undoubtedly. And that's why the Court's policy has discretion embodied in it at all of these levels. So what I'm saying is by its terms, the Court oversees this. Right. But here's the reason I'm asking you that. We're here being asked to affirm a policy that has a great level of restraint much greater than the policy that was approved in Howard, which was leg shackles and initial appearance. You know, the Central District has the same problem as San Diego, same marshals, staffing shortages, two courthouses spread two blocks apart, but they were able to live with that lesser level of restraint. Now, as I indicated to counsel, I think the evidentiary record is better in this case, and I appreciate the fact that with the uptick in violence, the incidents detailed in the marshal's declaration, less secure courthouse, reduced staffing shortages, we've got to look at that entire picture to determine whether restraint is appropriate, and if so, what level of restraint. So given the evidentiary record that's been presented in this case, is there anything that supports full five-point restraint versus some lesser level of restraint? I'm wondering if we can remand this case back. If there's some gaps in the evidentiary record, do we affirm? If so, on what theory? So help me out with that. Well, I would say this, Your Honor. I don't think — first of all, if you think about Dell v. Woolfish and the notion of we don't want the courts to be micromanaging — and I understand it's different. It's prison, essentially, but the same principle applies. We don't want to be micromanaging the marshals and saying, well, why is this level better than that one? As long as it's reasonably related to a legitimate government interest, then it's okay. And then secondly, there's the issue of — and this came up in Howard. It's a reasonable thing to do, to defer to the marshal's judgment in the first instance. But we don't treat courtrooms the same way that we treat prisons. No, I understand that, Your Honor. But the principle I'm suggesting is — We don't treat people who have not been convicted of crimes the same way that we treat people who have. Understood, Your Honor. I don't dispute that at all. I do, and I don't dispute that the level of restraints is higher here than it was in Howard. There's no question about that. And it's a broader policy. It applies to more people, as I understand it, because Howard was pre-trial detainees. Correct. And you're saying that this policy, which authorizes potentially five-point restraints, applies to everybody. Well, it does with the exceptions that are explicitly embodied in the policy and with the discretion at both levels that I've indicated. Now, the other thing I'd say in answer just to Your Honor's point, I just looked at the district court statistics, and it's three times the number of defendants in the Southern District as it is in the Central District. And you look at the comparable districts, Arizona, New Mexico, Southern and Western Texas, all of them use full restraints all the time, according to the record. And I looked. I don't even see — I didn't even find a challenge to that. Now, maybe — Doesn't mean this case shouldn't be the case to challenge it. No. I don't disagree with that. But what I'm saying is it's not so outrageous, if it were so outrageous. Well, the marshals — I don't think Federal defenders in Arizona would have brought it up. And given the factual record here, which was full, I mean, I look back at the record in Howard, and there were two declarations of a marshal, pretty scanty. I don't see how we can take judicial notice of the fact that the conditions in this district are the same as the conditions that are everywhere else. There's no showing in this record. And I'm just not — I'm concerned about the evidentiary record as well. Your Honor, I — These are courthouses that were built as courthouses. Correct, Your Honor. Roybal was not. The only thing I'd suggest, Your Honor, is I'm not referring to facts that are not in the record. They're in the record at page 262 and 263. That is, the practices of the other comparable districts. There's no question about it. And the issue of — But they haven't been judicially approved, have they? I mean, they haven't been — there's no appellate case upholding those practices. No. No. But — Okay. Since we're talking about other cases, can I drop the Mora Marin case currently on appeal in the Ninth Circuit? And I don't know if you know anything about that or how that might impact this appeal. Also dealing with, I think, a similar issue. I'm not sure which case you're referring to, Your Honor. Does it have to do with immigration proceedings? Because if it does, I'd say that makes a big difference. A different bucket? Right. And — You were talking about how district judges, in reality, have backed away from the full application of the policy that the marshals wanted implemented. Can you be a little more specific about that? Are they ordering leg shackles only in lieu of five-point restraints? Yes. How's that working out? The problem is it's a little bit of a moving target. But I ask the marshals, what's the policy for all the district judges? And I will concede up front, to be frank with you, Your Honor, one district judge has full restraints all the time. But he's the outlier, as is the outlier Judge Huff is, no restraints ever. But then about seven out of 16 is leg restraints only, and I think the remainder, slightly more than half, is full restraints, but then with the exceptions of the changes of plea and sentencing. So the point there just is that the discretion, there's evidence in the record that the snapshot that existed at the time of discretion being exercised, but as current practice has evolved, it continues to be exercised. Well, that goes back to what we've been talking about, both with counsel defendants as well as you, which is the level of restraint. I think to go back to completely unrestrained, I'm not sure on this evidentiary record how that could really be squared with Howard, but in terms of level restraint, if district judges in your district feel that it's appropriate to scale back from full restraint, shouldn't then that be the presumptive policy with justification on a greater level of restraint instead of the other way around? I disagree with that, Your Honor, because I really do think, Judge Burns, for instance, used the word, it would be presumptuous of me to second-guess the marshals on certain things. And the issue of micromanagement and Bell versus Woolfish and so on, the district court judges and the marshals in the Southern District of California are, in the first instance, charged with the security issues and with making sure that the due process rights of the defendants are acknowledged and realized in court, and they've come to a working accommodation on that that really ought to be deferred to some understanding that they're the experts there, particularly the marshals. And it's reasonable for the court to do that, to defer to them in the first instance with all of these caveats and discretion embodied. But the reality is that the district judges on the ground there who know best and who have the continuing relationship with the marshals have worked out an accommodation that's less restrictive. In reality, some have. All but one, you indicated, have worked out an accommodation that's less restrictive than what this presumptive policy suggests. So in that instance, you're still asking us to then affirm the full policy when that's not how it's operating on the ground? Well, the policy is one that embodies discretion at the points that I've indicated. And so the policy is being enacted, so to speak, with those variations. And I get back to the point that you're making. So you want us to hold that they should have discretion to have full shackles at every point in the proceedings if the marshal says that that's what recommends that? Well, I don't think so, because that's not what the policy at this point is what's embodied in Judge Moskowitz's letter, which has certain carve-outs. So I'm not asking for the affirming of that broad a notion, Your Honor. And the second thing I'd say is I get back to the point of just because certain judges have cut back doesn't mean that risk hasn't increased. Here's what is troubling me. The Roybal building was – Howard involved a building that was never built as a courthouse. And it has problems. These buildings were built as courthouses, and they have all – lots of security built in. And so I don't see anything – Howard was talking about a particular situation in a particular building, and I don't see anything very site-specific here. I see that there have been incidents, but I don't see anything that really explains in terms of this building that why this kind of shackling is necessary. And it seems to me that what is being argued for is that this is a universal standard that gives discretion for judges with the recommendation of the marshal to impose a bit more severe shackling than was involved in Howard. And I don't see the record that would support that. I would disagree that there's not site-specific information, Your Honor. And I'd point the Court to what was submitted with our supplemental excerpts of record 55 through 68. That's the declaration of the assistant deputy marshal. And there's – Yeah, that goes to the – It is very much in detail about the number of defendants, the configurations of the courtroom, how unsecure it is to take out the defendants right – basically at the door to the left and right of the bench here. The defendants are brought out in front of the judges and everybody else. I mean, there's a huge number of site-specific facts contained in that declaration, I would submit to Your Honor. So I disagree with you. Okay. Let me indicate that – I'll read the record. The case I referred to earlier was cited by your opponent in the supplemental letter. And Maura Marin is not an immigration case, but a fully shackled case that is on appeal to the Ninth Circuit. But setting that aside for a moment, your opponent also cited in the supplemental letter a recent en banc decision from this circuit, Lopez Valenzuela. And I want you to respond to this statement from your opponent, if you would please. Because the Southern District shackles even those detainees who do not pose a significant enough risk of flight or danger to warrant restraints, and because detainees cannot seek an individualized determination of their particular flight or safety risk, this scheme cannot withstand scrutiny under Lopez Valenzuela. I don't know if you've had a chance to read it, but I would like you to comment if you have. I have, Your Honor. I'd make two points about that. One, the issue there was the basic – in that case, the recent case, was irrebuttable, absolute presumption that undocumented aliens couldn't get bail. You couldn't get out of that. Contrast that with the policy here, discretion at – first of all, certain proceedings note, not the full restraints. Individual judges have discretion for individual defendants, and individual judges have discretion over their courtroom. So there's discretion built in on all those levels. That takes it out of that Ninth Circuit case that was noticed in the 20HA letter. And in addition, Judge Wynn, I believe, concurred in that result. There was evidence that the whole point of it was punitive. And there's no evidence on the record here that would indicate that this is punitive in nature. And then I think, to get back – now I understand the case that Judge Zahari was referring to earlier. That's the case actually coming from the Southern District. But that's on appeal itself about that particular issue, a bench trial. That's to be decided whether that judge's individual discretion was abused or not. That's not bearing on this particular policy. I'd suggest it has no bearing on this case at all. If the judge abuses discretion in a bench trial by having the defendant in restraints, that's up for a panel of this Court to decide, and will. Kagan. Do I understand that this policy has no end limit? Is that right? I don't think there wasn't a sunset provision put in. Right. That doesn't mean that the chief judge, Judge Moskowitz, wouldn't be visiting with the marshals. As the caseload fluctuates, things change. But there is no stated limit. Okay. All right. Thank you very much, Counsel. Thank you. Twenty-three seconds, Your Honor. I would like to suggest that if the Court is inclined to affirm in any way based on a record of upticks in violence, which was suggested below and hotly contested, or with all due respect to Mr. Hoffman, his suggestion that the district is backed off the policy, which is certainly nothing in the record before this Court, we do need a remand. Brandau requires a remand to an out-of-district judge. I don't think that there is any other way to have a remand than to a disinterested judge who can consider this issue in the first instance. Do I qualify? Your Honor, you've heard this issue on appeal, so I'd have to look at that. But I would love to have you. And just briefly, Judge Schroeder, I understand you were making a distinction between people who've already been convicted and pretrial defendants. What's so unreasonable or unrational about this policy is once you've been convicted, you're in lesser restraints. And before you've been convicted, when all of your constitutional rights are at stake, you're in five-point restraints. It's a policy that makes no sense. Thank you. Thank you very much, counsel. Thank you both for your arguments. They were very helpful in this very interesting case. We'll take the matter under submission for decision.
judges: Zouhary, Schroeder, Nguyen